*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 13, 2021

Plaintiff-Appellee,

v

No. 348587
Wayne Circuit Court
LC No. 16-001606-01-FC

LOVELL CHARLES SHARPE,

Defendant-Appellant.

Before: BOONSTRA, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of first-degree criminal sexual conduct (CSC I) (causing personal injury to victim and using force or coercion to accomplish sexual penetration), MCL 750.520b; two counts of third-degree criminal sexual conduct (CSC III) (victim at least 13 years old and under 16 years old), MCL 750.520d(1)(a); and one count of fourth-degree criminal sexual conduct (CSC IV) (victim at least 13 years old but less than 16 years old and actor is five or more years older), MCL 750.520e. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to concurrent prison terms of 15 to 30 years for his CSC I conviction and 10 to 15 years for each CSC III conviction, as well as 12 months in jail for his CSC IV conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Defendant was in a dating relationship with Rosland Livingston (Livingston) from about 2013 until the spring of 2015. Later in 2015, Livingston's daughter, DM, accused defendant of having sexually assaulted her on three separate occasions between July of 2014 and January of 2015. At the time of the assaults, DM was 14 years old. DM became pregnant as a result; her pregnancy was terminated in 2014.

DM testified at trial that defendant and Livingston lived separately, but that Livingston and DM would occasionally spend the night at defendant's home, and he in turn would occasionally spend the night at their home. She testified that one assault occurred at defendant's home, while the other two assaults occurred while defendant was babysitting her (in Livingston's absence) at Livingston's home.

Before trial, the prosecution moved to admit evidence that DM had become pregnant after defendant sexually assaulted her, that her pregnancy had been terminated by an abortion, and that she had never had sexual intercourse with anyone else. The trial court denied the prosecution's request to admit evidence of DM's abortion and lack of sexual partners, finding that it was inadmissible under MRE 404(a)(3). But the trial court granted the prosecution's request to admit evidence of DM's pregnancy.

Both the prosecution and defendant appealed the trial court's decision. In a published opinion, this Court held that all of the challenged evidence was admissible. *People v Sharpe*, 319 Mich App 153, 173; 899 NW2d 787 (2017). Defendant appealed this Court's decision to the Michigan Supreme Court. Although the Supreme Court rejected this Court's rationale, it affirmed, holding that this Court had reached the correct result. See *People v Sharpe*, 502 Mich 313, 319; 918 NW2d 504 (2018). It then remanded the case back to the trial court. *Id*.

Defendant's trial began on March 4, 2019. Because the assigned judge, Judge Shannon Walker, was finishing another trial, she asked Judge Regina Thomas to preside over the jury selection in defendant's case. Judge Thomas obliged. Before Judge Thomas called in the jury venire, defendant expressed that his defense counsel was unprepared for trial. His counsel disputed this, explaining that he had conducted discovery and that he had spoken with defendant at least four times. The prosecution agreed that defense counsel had been diligent in asking for information and in conducting discovery.

Judge Thomas stated that she was unsure whether defendant was asking for a new attorney or for an adjournment. Defense counsel said that he believed defendant was asking for a new attorney. On the assumption that defendant was requesting new counsel, Judge Thomas denied the request. She added that if the parties believed that this was something that Judge Walker should address, she would wait to call in the jury venire. Defense counsel told Judge Thomas that they could move forward and then deal with the issue before Judge Walker. Judge Thomas then began the jury selection by explaining that she was filling in for Judge Walker and that she would only be conducting the jury selection. She noted that Judge Walker would be swearing in the jury and providing preliminary instructions.

The next day, after the jury selection concluded, Judge Walker took over the proceedings. Defense counsel and the prosecution informed Judge Walker that defendant was concerned that his attorney was unprepared for trial. Defense counsel explained that defendant was either asking for an adjournment or for a new attorney. Judge Walker replied that she was denying defendant's motion either way, noting that defendant's case had been pending on her docket for over a year.

The trial proceeded. Near the end of the prosecution's direct examination of DM, the prosecutor asked DM whether she remembered going to "Kids Talk" after she reported her assault to police. She replied, "Yes, I went there for therapy." On cross-examination, defense counsel asked DM how many times she had had gone to a therapist. DM replied, "One time."

After DM finished testifying, the prosecution called as a witness Sergeant Jose Ortiz of the Detroit Police Department. The prosecutor asked Sergeant Ortiz whether he was familiar with a place called Kids Talk. Before Sergeant Ortiz could answer, defense counsel objected on the basis of relevance. The trial court excused the jurors for a bench conference. Noting that DM had

testified that she went to Kids Talk for therapy, the prosecutor explained that she wanted Sergeant Ortiz to explain in general terms what Kids Talk is. Defense counsel argued that DM had clearly testified that she went to therapy—there was no need for further elaboration. After considering their positions, the trial court ruled that the prosecution could ask Sergeant Ortiz to answer in general terms what Kids Talk is, but could not "clarify for the jury whether or not that's what [DM] was referring to when she said she spoke to a therapist."

Sergeant Ortiz testified that "Kids Talk is a facility where they conduct interviews of children. The forensic interviewers are–they have extensive training in how they interview young victims." He added that Kids Talk is only for "children under the age of 16 where the alleged perpetrator is 17 or older." The following exchange then occurred:

> *Prosecution*. How many times does a child typically go to Kids Talk?
>
> *Defense Counsel*: Objection to relevance.
>
> *The Court*: Sustained.
>
> *Ortiz*. ~~One time.~~ [Strikethrough indicates answer stricken from the record]
>
> *Prosecution*: No. No.
>
> *Ortiz*: I'm sorry.
>
> *The Court*: The objection was sustained, so the jury is to disregard the witness's answer.

The prosecution, defense counsel, and trial court then had a sidebar off the record. Afterward, the trial court again instructed the jury to disregard Sergeant Ortiz's answer and ordered that his answer be stricken from the record.

Defense counsel moved for a mistrial, arguing that Sergeant Ortiz knew that he was not supposed to answer the prosecution's question yet did so anyway in an attempt to rehabilitate DM's testimony, and that a curative instruction could not remedy the error. The trial court denied defense counsel's motion for mistrial.

Defendant was convicted and sentenced as described. This appeal followed.

While this case was pending on appeal, defendant moved the trial court for a new trial or in the alternative for a *Ginther*[1] hearing, arguing that defense counsel had rendered ineffective assistance of counsel because he had failed to object to having Judge Thomas preside over the jury selection. Defendant contended that an objectively reasonable lawyer in his counsel's position

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

would have objected to Judge Thomas's presiding over voir dire. As for prejudice, defendant argued that Judge Thomas's presiding over voir dire deprived him of his chance to express concern to Judge Walker about his counsel's preparedness for trial. The trial court denied the motion. This Court also denied defendant's motion to remand.[2]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that his trial counsel was ineffective in failing to object to Judge Thomas conducting the jury voir dire. We disagree. "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016), citing *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). We review a trial court's findings of fact for clear error and review de novo questions of law. *Id.*, citing *LeBlanc*, 465 Mich at 579. A trial court's findings of fact are clearly erroneous "if after a review of the entire record, the appellate court is left with a definite and firm conviction that a mistake has been made." *People v McSwain*, 259 Mich App 654, 682; 676 NW2d 236 (2003) (citation omitted). Because no *Ginther* hearing occurred below, our review is limited to errors apparent on the record. *People v Acumby-Blair*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347369), slip op at 8.; *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

Both the Michigan and United States Constitutions require that a criminal defendant be provided effective assistance of counsel in his or her defense. US Const Am VI; Const 1963, art 1, § 20; *People v Ackley*, 497 Mich 381, 388; 870 NW2d 858 (2015). Because this Court presumes that counsel's assistance was effective, a criminal defendant bears the burden of proving otherwise. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012) (citations omitted). Establishing a claim of ineffective assistance of counsel requires a defendant to show that: (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's performance prejudiced defendant. *Id.*

In this case, defendant argues that his trial counsel's performance fell below an objective standard of reasonableness because his counsel failed to object to Judge Thomas's presiding over voir dire. Defendant contends that remand is necessary to develop a record as to how his counsel's failure to object prejudiced him. We disagree.

To establish that his counsel's performance fell below an objective standard of reasonableness, defendant was required to show that it was error for a substitute judge to preside over the jury selection.[3] See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010)

---

[2] *People v Sharpe*, unpublished order of the Court of Appeals, entered October 23, 2020 (Docket No. 348587).

[3] Defendant argues that he has the constitutional right to have the same judge preside over every phase of his trial, and therefore that the substitution of Judge Thomas was a constitutional error requiring reversal regardless of prejudice. We disagree. Our Supreme Court has clearly stated that "the examination of jurors under voir dire does not elicit any information that can be used in the trial of the case" and that "a substitution following voir dire, and before opening statements or

-4-

("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). This Court has held that it is error for a different judge to preside over voir dire only if a defendant can show that he or she was prejudiced as a result. See *McCline*, 442 Mich at 130-132. Accordingly, to show that it was error for Judge Thomas to preside over voir dire, defendant was required to show that this prejudiced him in some way.

Defendant's only theory of prejudice is that Judge Thomas's presiding over voir dire prevented his complaints about his counsel's preparedness for trial from being addressed. Defendant's argument is not supported by the record. See *People v White*, 331 Mich App 144, 148; 951 NW2d 106 (2020) (noting that defendant bears burden of establishing factual predicate for his or her ineffective assistance of counsel claim). First, Judge Thomas did not decline to address defendant's complaint. She explicitly denied defendant's request for new counsel and offered to defer the jury selection until Judge Walker could address the issue—an offer defense counsel declined. Second, defense counsel informed Judge Walker of defendant's complaint the moment Judge Walker took over. Judge Walker acknowledged defendant's complaint but determined that it had no merit. She ruled that she would neither appoint defendant a new attorney nor grant him an adjournment. Although defendant may not have received the answer he wanted, he cannot contend that his complaint went unaddressed. Defendant has not carried his burden of showing deficient performance and prejudice from his trial counsel's actions. *Lockett*, 295 Mich App at 187. Further, defendant has not established that a *Ginther* hearing is necessary to further explore this issue.

## III. DENIAL OF MOTION FOR MISTRIAL

Defendant also argues that the trial court abused its discretion by denying his motion for a mistrial. We disagree. "This Court reviews a trial court's decision regarding a motion for a mistrial for an abuse of discretion." *People v Caddell*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket Nos. 343750, 343993), slip op at 4, citing *People v Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "An abuse of discretion occurs when the trial court 'chooses an outcome that falls outside the range of principled outcomes.' " *People v March*, 499 Mich 389, 397; 886 NW2d 396 (2016).

"A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *Caddell*, ___ Mich App at ___; slip op at 4, citing *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). Defendant argues that Sergeant Ortiz's statement that DM visited Kids Talk "one time" was so prejudicial as to warrant a mistrial, because by testifying that a victim would visit Kids Talk only once, Sergeant Ortiz knew that a juror would infer that Kids Talk is a law enforcement program—not a therapy. Therefore, according to defendant, Sergeant Ortiz's testimony resulted in the jury being more likely to believe that DM was the victim of a crime, improperly bolstering her credibility.

Defendant's argument is unpersuasive. The link between Kids Talk being perceived by the jury as "a law enforcement program" and DM's credibility is tenuous at best. Even assuming

---

the introduction of proof, is not a ground for automatic reversal absent a showing of prejudice. *McCline*, 442 Mich at 133-134.

that the jury could infer that Kids Talk was a "law enforcement program" and that interviewees were alleged victims of crimes, defendant has not shown that this inference would have improperly bolstered DM's credibility. It was undoubtedly obvious to the jury from DM's testimony and the fact of the trial itself that DM had accused defendant of a crime. And defendant has not provided any evidence in support of the argument that the jury could infer from Sergeant Ortiz's testimony that the police somehow took DM's complaint "more seriously" than other sexual assault complaints. Further, Sergeant Ortiz had already testified without objection that Kids Talk interviewers "have extensive training in how they interview young victims." In short, defendant has not established a link between Ortiz's two-word statement and an improper bolstering of DM's credibility.

In any event, and notwithstanding defendant's assertion that the trial court failed to give a curative instruction, the trial court in fact not only struck Ortiz's answer from the record but twice instructed the jurors to disregard it. "Jurors are presumed to follow instructions." See *People v Petri*, 279 Mich App 407, 414; 760 NW2d 882 (2008). Defendant has not shown that the trial court's instruction was insufficient to cure any error. The trial court did not abuse its discretion by denying his motion for a mistrial. *Caddell*, ___ Mich App at ___, slip op at 4.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola